[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 281 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
This court decided, in Wolfe v. Howes (20 N.Y., 197), that, where a person is prevented by sickness or death from fully performing a contract for his personal services, which he has partially performed, compensation may be recovered for the services actually rendered by him under the contract. That decision shows that the plaintiff, as executor, may recover, in this case, compensation for the services his testator rendered for the defendant, although he was prevented by sickness and death from performing all he was to render according to the agreement between them: also, that the agreement is "of consequence" in measuring or regulating the compensation to which the plaintiff is entitled. The latter conclusion is irresistible, for the reason that the agreement was *Page 283 
not rescinded by the death of the testator, but remained in force, so far as to show his employment by the defendant and the value of the services rendered under it. Besides, it would be palpably unjust to disregard the stipulated value of the testator's services, for it is evident that he was employed in consequence of his integrity and capacity for the services required; and to allow the defendant now to reduce the value of such services by proof of the sum for which he could have employed another person to perform the same services, in whom he might or might not have had confidence, would enable him, according to the first decision of the referee, to gain more than $20,000 by the testator's death.
The question whether a servant, who has not fully performed his contract, is, prima facie, entitled to recover the stipulated value of the services actually rendered, when disabled by sickness from serving the full term agreed upon, was not properly before the Supreme Court in Fahy v. North (19 Barbour, 341). The servant, in that case, recovered fifty cents per month less than his employer was to pay him, according to the agreement between them, but he did not appeal from the judgment; his employer was the appellant, and the only material question determined on the appeal was, whether the sickness of the servant was an excuse for his not working the length of time agreed upon; and the court held it was.
There is no case which holds that where the full performance of a contract for personal services is prevented by the sickness or death of the party, who was to render the services, a greater compensation can be recovered than the stipulated value, on proof that the services were worth more than such value. But there are decisions, that the recovery in such a case cannot exceed the contract price, or the rate of it for the part of the service performed. (Cole v. Smith, 4 Ind., 79; Allen v. McKibbin,5 Mich., 449.) The doctrine was asserted in Allen v.McKibbin, that the servant cannot be permitted to gain by his sickness, nor can the employer be permitted to lose by it. *Page 284 
The Supreme Court of Vermont held in Patrick v. Putnam
(27 Vt., 759), that a person contracting to labor for a definite term, who fails to fulfill his contract by reason of sickness, is liable to have the amount of his recovery reduced from the contract price, by the damages sustained by his employer, in consequence of his not being able to complete the full term of service. This rule is equitable; and it should be applied to such cases, although the servant is not to be regarded as violating his contract, in consequence of his inability fully to perform it, by reason of his sickness or death. His failure fully to perform his contract, for such a cause, is his misfortune and not his fault; and his employer should neither gain nor lose by it.
This rule is just to the servant as well as the employer; and it should have been applied to this case. Much more might be said in favor of this rule, but it needs no vindication; it is so well grounded in good sense it sufficiently commends itself. It may be said to be a common sense rule, and common sense is the basis of all just law.
This rule does not conflict with the decision of this court inJones v. Judd (4 Comst., 412). In that case the defendant had a contract with the state to complete certain sections on the Genesee Valley canal, and he sublet a part of the work to the plaintiffs at a certain stipulated price per yard for excavation, and a certain other stipulated price per yard for embankment. After the plaintiffs had done a portion of the easiest work on their job, the state, by a legislative act, stopped the work; and this court, by an equally divided vote, affirmed a judgment by which the plaintiffs had recovered the stipulated prices per yard for what earth they had excavated and embankments they had made. The plaintiffs in that case were not in default at all; and although the defendant was not blamable for the stoppages of the work, he had his remedy against the State for all damages he sustained by reason of the stoppage. That case, therefore, is clearly distinguishable from this.
By applying the rule to this case, that the servant, when prevented by sickness or death from fully performing a contract *Page 285 
for his personal services, may recover compensation for the services performed, at the rate specified in the contract, subject to the right of the employer to reduce the same, by proof of the damages, if any, sustained by him in consequence of the servant not being able to complete the stipulated term of service, justice would be done to both parties, and the plaintiff would recover one-third of the profits earned, at the time of the testator's death, on the contracts the defendant and his associates had with the government of the United States, not only for constructing the dry dock and the lease of it, but also the basin and railway, after deducting the damages, if any, the defendant sustained in consequence of the sickness and death of the testator, prior to the completion of the work.
The first decision of the referee shows that the compensation of the testator can be ascertained from the evidence, according to the measure fixed by the contract.
It is no objection to the rule above stated, that at the time the testator died, the profits earned upon the contracts the defendant and his associates had with the United States Government, could not have been ascertained; and that if the action had then been brought and tried, it would have been impossible to measure the testator's compensation for services in the manner specified in the agreement under which they were performed. If the plaintiff had then brought his action, and failed to recover the proper compensation, because it was impossible for him then to make the requisite proofs, he would have been beaten, as any other person is when he fails to obtain justice for the want of legal evidence to establish his case. The plaintiff acted wisely, and waited until he could legally and properly prove his case, before bringing his action. But it is unnecessary to determine whether the plaintiff could have brought this action immediately after the testator died, or was obliged to wait until the dry dock, basin and railway were completed and paid for by the United States before bringing it; and I will not express an opinion upon the question. *Page 286 
The cases relied on by the Supreme Court, to support the position that the agreement under which the services were performed, could not be resorted to, for measuring the compensation therefor, because the same could not be ascertained by "arithmetical calculation," arose in actions to recover compensation for services performed under agreements void by the statute of frauds; and are inapplicable to a case where the services were performed, as in this, under a valid contract.
The foregoing views lead to the conclusion, that the referee erred, on the last trial, in ascertaining the value of the testator's services without reference to the agreement under which they were performed, or the profits the defendant made and received upon the contracts he and his associates had with the Government of the United States, for constructing the dry dock, basin and railway, and the lease of the dry dock.
The judgment of the Supreme Court should be reversed, and a new trial granted, costs to abide the event.
Some of the judges dissented from the idea that the agent, not being in fault in dying, could be treated as liable to damages to compensate the principal for a reduction of the profits in the further prosecution of the work, arising from the loss of the agent's services. The case did not show what loss, if any, was sustained by the defendant from this cause, but showed a profit upon the work as a whole. It was thought that, in the absence of evidence, the profits should be regarded as distributed ratably throughout the work, and as divisible, not in proportion to time, but to the amount of work performed and material furnished. The result of the discussion was this:
SELDEN, J., did not sit in the case; all the other judges were for reversal; and all of them, except ROSEKRANS and BALCOM, Js., concurred in this rule, propounded by MARVIN, J., for measuring the plaintiff's damages: The testator's compensation is to be ascertained by taking one-third of such a *Page 287 
proportion of the whole profits earned and received by the defendant as the amount and cost of the work done at the time of the testator's death bears to the entire cost of the work when completed.
Judgment reversed, and new trial ordered.