THOMAS LACY, Respondent, v. SOPHRONIA A. GETMAN, as Executrix, etc., Appellant.

While the common-law rule that the contract relations of master and servant are dissolved by the death of either party, has been limited, it still applies in cases in which the relation may be deemed purely personal and involves neither property rights nor independent action ; it applies both to the contract of the master and to that of the servant, and

includes as well cases where the services are those of unskilled as where they are of skilled labor.

Plaintiff contracted orally with McM., defendant's testator, to work upon his farm as an ordinary farm laborer for one year, commencing in March. Plaintiff entered upon the service and worked under the direction of McM. until in July when the latter died, leaving a will by which he gave his widow a life estate in the farm and the use and control for life of all his personal property in the house and on the farm. Plaintiff knew in a general way the terms of the will; he continued on without being hired or employed by McM.'s executrix until the close of the year, doing the farm work under the direction of the widow. In an action against the executrix to recover for his services for the whole year, *held*, that upon the death of McM. the contract terminated, and the plaintiff was only entitled to recover the proportionate amount earned at the death of McM.

(Argued December 19, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 2, 1888, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*Elon R. Brown* for appellant. Where performance of a contract for personal services is rendered impossible by the death of one of the parties, no recovery can be had for services not already rendered. (*Farrow* v. *Wilson*, L. R. [4 C. P.] 744; *People* v. *G. M. L. Ins. Co.*, 91 N. Y. 174; *Babcock* v. *Goodrich*, 3 How. Pr. 52, 53; *Lacy* v. *Getman*, id. 250; *Austin* v. *Monroe*, 4 Lans. 67; 47 N. Y. 360; *Boast* v. *Firth*, L. R. [4 C. P.] 1; 71 N. Y. 44; *Wolf* v. *Howes*, 20 id. 197; 24 Barb. 174, 666; *Fahey* v. *North*, 19 id. 341; *Clark* v. *Gilbert*, 32 id. 576, 581; 26 N. Y. 279; *Spalding* v. *Rosa*, 71 id. 40; *Seymour* v. *Caggar*, 13 Hun, 29; *Farrow* v. *Wilson*, L. R. [4 C. P.] 743.) This action is brought against the executor as such and not against her upon any individual liability incurred by her in the administration of the estate.

Opinion of the Court, per FINCH, J.

The question of liability, therefore, rests upon the original contract exclusively, and not upon any subsequent dealings between the plaintiff and the executor. (*Ferrin* v. *Myrick*, 41 N. Y. 315.)

*W. A. Nims* for respondent. The death of the employer did not terminate the contract; death was a condition which would not affect it except by express stipulation. (*Tompkins* v. *Dudley*, 25 N. Y. 272; *Williams* v. *Vanderbilt*, 25 id. 217; *Booth* v. *S. D. R. M. Co.*, 60 id. 487; *Dexter* v. *Norton*, 47 id. 62; *Wheeler* v. *C. M. L. Ins. Co.*, 82 id. 543; *Devlin* v. *Mayor*, etc., 63 id. 14–18.) The only exception to the rule of law above stated is in the case of a contract contemplating skilled personal services. (*Wolfe* v. *Howes*, 26 N. Y. 197; *Spalding* v. *Rosa*, 71 id. 40; *Devlin* v. *Mayor*, etc., 63 id. 14–18; *People* v. *G. M. L. Ins. Co.*, 91 id. 179–180; 1 Pars. on Cont. [7th ed.] 145.) The contract in the case at bar contemplated unskilled, ordinary farm labor, and does not fall within the exceptions above noted. (*Martin* v. *Hunt*, 1 Allen, 418; 71 N. Y. 40; *Quick* v. *Ludbuum*, 3 Bulst. 30; *Wentworth* v. *Cook*, 11 A. & E. 42.) It is an elementary principle of the law governing contracts that "when the contract is executory in its nature, and a personal representative can fairly and sufficiently execute all that the original contractor could have done, it is not terminated by the death of either of the contracting parties." (1 Pars. on Cont. [7th ed.] 145; *Martin* v. *Hunt*, 1 Allen, 418; *Wentworth* v. *Cook*, 11 A. & E. 42; *Wolfe* v. *Howes*, 20 N. Y. 197–200; *Spalding* v. *Rosa*, 71 id. 40; *Wheeler* v. *C. M. L. Ins. Co.*, 82 id. 543–550; 3 Williams on Exrs. 1826–7.)

FINCH, J. The relation of master and servant is no longer bounded by its original limits. It has broadened with the advance of civilization until the law recognizes its existence in new areas of social and business life, and yields in many directions to the influence and necessities of its later surround-

ings. When, therefore, it is said generally, as the commentators mostly agree in saying, that the contract relations of principal and agent, and of master and servant, are dissolved by the death of either party, it is very certain that the statement must be limited to cases in which the relation may be deemed purely personal, and involves neither property rights nor independent action. Beyond that, a further limitation of the doctrine is asserted, which approaches very near to its utter destruction, and is claimed to be the result of modern adjudication. That limitation is that the rule applies only to the contract of the servant, and not to that of the master, and not at all, unless the service employed is that of skilled labor peculiar to the capacity and experience of the servant employed, and not the common possession of men in general; and it is proposed to adopt as a standard or test of the limitation an inquiry in each case whether the contract on the side of the master can be performed after his death by his representatives substantially, and in all its terms or requirements, or cannot be so performed without violence to some of its inherent elements.

The agitation of that question has kept the present case passing like a shuttle between the trial and the appellate courts, until it has been tried four times at the circuit and reviewed four times at General Term, and at last has been sent here in the hope of securing a final repose.

The facts are few and undisputed on this appeal. The plaintiff, Lacy, contracted orally with defendant's testator, McMahan, to work for the latter upon his farm, doing its appropriate and ordinary work for a period of one year at a compensation of two hundred dollars. Lacy entered upon the service in March, doing from day to day the work of the farm under the direction of its owner, until about the middle of July, when McMahan died. By his will he made the defendant executrix, but devised and bequeathed to his widow a life estate in the farm, and the use and control of all his personal property whatsoever in the house and on the farm, during the term of her natural life. Lacy knew in a general way the

terms of the will. He testifies that he knew that it gave to the widow the use of the farm and that she talked with him about the personal property. It is admitted that the executrix did not hire or employ him, but he continued on to the close of the year, doing the farm work under the direction of the widow until the end of his full year. He sued the executrix upon his contract with the testator, and has recovered the full amount of his year's wages. From that decision the executrix appeals, claiming that the judgment should have been limited to the proportinate amount earned at the death of McMahan, and that the death of the master dissolved the contract.

It is obvious at once that an element has come into the case as now presented, which was not there when the General Term first held that the contract survived. It now appears that the executrix could not have performed her side of the contract at all after the death of McMahan, by force of her official authority, because she had neither the possession of the farm or personal property upon it, and no right to such possession during the life of the widow. She had no power to put her servant upon the land, or employ him about it, and in her representative character she had not the slightest interest in his service and could derive no possible benefit from it. The plaintiff's labor, after the death of McMahan, was necessarily on the farm of the widow, by her consent, for her benefit, and under her direction and control, and equitably and justly should be a charge against her alone. The test of power to perform on the part of the personal representative of the deceased fails in the emergency presented by the facts, except possibly upon proof of the consent of the widow.

We have then the peculiar case of a contract made to work *for* McMahan and under his direction and control, which could not be performed because of his death, transmuted into a contract to work *for* Mrs. Getman upon a farm which she did not possess and had no right to enter; and performed by working for the widow and under her direction and control alone ; and this because of the supposed rule that the contract

survived the death of the master and remained binding upon his personal representatives.

It is true that some interest in the personal property on the farm is claimed to have vested in the executrix, notwithstanding the terms of the will, and the inventory filed by her is appealed to, and the necessity of a resort to the personal property with which to pay debts. There is no proof that the testator owed any debts, and the inventory covers nothing as to which Lacy's labor was requisite or necessary, except possibly some corn on the ground valued at eighteen dollars. All the grain inventoried was in the barn, needing only to be threshed, and must be assumed to have been there when testator died; and the other property consisted of farm tools and a cow and horse, to the use of which the widow was entitled and which, if sold to pay possible debts, would have left the servant without means of doing his work and with nothing to do, unless for the widow. So that the bald question is presented whether the contract survived the testator's death and bound his executrix, who was without power or authority of her own to perform, and had no interest in performance.

It seems to be conceded that the death of the servant dissolves the contract. ( *Wolfe* v. *Howes*, 20 N. Y. 197 ; *Spaulding* v. *Rosa*, 71 id. 40 ; *Devlin* v. *Mayor, etc.*, 63 id. 14 ; *Fahy* v. *North*, 19 Barb. 341 ; *Clark* v. *Gilbert*, 32 id. 576 ; *Seymour* v. *Cagger*, 13 Hun, 29 ; *Boast* v. *Firth*, L. R. [4 C. P.] 1.) Almost all of these cases were marked by the circumstance that the services belonged to the class of skilled labor. In such instances the impossibility of a substituted service by the representative of the servant is very apparent. The master has selected the servant by reason of his personal qualifications, and ought not, when he dies, to abide the choice of another or accept a service which he does not want. While these cases possess, with a single exception, that characteristic, I do not think they depend upon it. *Fahey* v. *North* was a contract for farm labor, ended by the sickness of the servant, and quite uniformly the general rule stated is that the servant's agreement to render personal services is dissolved by his death.

There happens a total inability to perform; it is without the servant's fault; and so further performance is excused and the contract is apportioned. If in this case, Lacy had died on that day in July, his representative could not have performed his contract. McMahan, surviving, would have been free to say that he bargained for Lacy's services, and not for those of another selected and chosen by strangers, and either the contract would be broken or else dissolved. I have no doubt that it must be deemed dissolved, and that the death of the servant, bound to render personal services under a personal control, ends the contract, and irrespective of the inquiry whether those services involve skilled or common labor. For, even as it respects the latter, the servant's character, habits, capacity, industry, and temper, all enter into and affect the contract which the master makes, and are material and essential where the service rendered is to be personal and subject to the daily direction and choice and control of the master. He was willing to hire Lacy for a year; but Lacy's personal representative, or a laborer tendered by him, he might not want at all and at least not for a fixed period, preventing a discharge. And so it must be conceded that the death of the servant, employed to render personal services under the master's daily direction, dissolves the contract. (*Babcock* v. *Goodrich*, 3 How. Pr. [N. S.] 53.)

But if that be so, on what principle shall the master be differently and more closely bound? And why shall not his death also dissolve the contract? There is no logic and no justice in a contrary rule. The same reasoning which relieves the servant's estate relieves also the master's, for the relation constituted is personal on both sides and contemplates no substitution. If the master selects the servant, the servant chooses the master. It is not everyone to whom he will bind himself for a year, knowing that he must be obedient and render the services required. Submission to the master's will is the law of the contract which he meditates making. He knows that a promise by the servant to obey the lawful and reasonable orders of his master within the scope of his contract is implied by law; and a breach of this promise in a material matter jus-

tifies the master in discharging him. (*King* v. *St. John, Devizes,* 9 B. & C. 896.) One does not put himself in such relation for a fixed period without some choice as to whom he will serve. The master's habits, character, and temper enter into the consideration of the servant before he binds himself to the service, just as his own personal characteristics materially affect the choice of the master. The service, the choice, the contract are personal upon both sides, and more or less dependent upon the individuality of the contracting parties, and the rule applicable to one should be the rule which governs the other.

If now, to such a case — that is to the simple and normal relation of master and servant, involving daily obedience on one side and constant direction on the other — we apply the suggested test of possibility of performance in substantial accord with the contract, the result is not different. It is said that if the master dies his representatives have only to pay, and anyone may do that. But under the contract, that is by no means all that remains to be done. They must take the place of the master in ordering and directing the work of the farm, and requiring the stipulated obedience. That may prove to effect a radical change in the situation of the servant, as it seems to have done in the present case, leading the plaintiff to the verge of refusing to work further for either widow or executrix, whose views apparently jangled. The new master cannot perform the employer's side of the contract as the deceased would have performed it, and may vary so far, from incapacity or fitful temper or selfish greed, as to make the situation of the servant materially and seriously different from that which he contemplated and for which he contracted.

We are, therefore, of opinion that in the case at bar the contract of service was dissolved by the death of McMahan, and his estate was only liable for the services rendered to the date of his death.

The judgment should be reversed and a new trial granted with costs to abide the event.

All concur.

Judgment reversed.