### HART *v.* MYERS *et al.*

*(Supreme Court, Special Term, New York County.* October, 1890.)

PARTNERSHIP—ACCOUNTING—EXTRA EXPENSES—ILLNESS OF PARTNER.

> By the terms of a partnership agreement between plaintiff and defendant for the purpose of carrying on the banking and stock commission business, plaintiff agreed to attend to all business of the firm in the stock-exchange, and defendant agreed to give all his time and attention to the office business. Plaintiff was prevented from performing his part of the business by illness, and, defendant not being a member of the stock-exchange, it was necessary to employ brokers to perform plaintiff's duties. *Held,* that the amount paid to the brokers so employed was not an expense to be borne by the firm, but should be charged to plaintiff personally.

Action by Harmon H. Hart against Theodore W. Myers and Edward H. Myers for an accounting of the partnership business of the firm of Theodore W. Myers & Co., which firm was composed of the parties to the action.

Before HAMILTON ODELL, Esq., Referee.

*M. H. Cardozo* and *Billings & Cardozo,* for plaintiff. *A. J. Simpson* and *Simpson & Werner,* for defendant.

ODELL, R. This action is for an accounting between partners. On December 31, 1888, the parties became copartners in the banking and stock commission business, as Theodore W. Myers & Co. By the terms of their agreement, the copartnership was to continue for two years. It was terminated by mutual consent on December 31, 1889. The entire cash capital of the firm was contributed by the defendants. The defendant Theodore W. Myers had been elected comptroller of the city of New York, and he was not required by the agreement to take any active part in the affairs of the firm. But the plaintiff and the defendant, Edward H. Myers, bound themselves "to give their entire time and attention to the business of the said copartnership, the party of the third part (the plaintiff) agreeing to attend to all the business upon the New York Stock Exchange, and the party of the second part (Edward H. Myers) agreeing to give his time and attention to the office business. In September or October, 1889, the plaintiff became seriously ill and disabled from rendering further services to the firm. It, therefore, became necessary to employ other brokers to perform the duties upon the stock-exchange, which the plaintiff had covenanted to perform in and by the copartnership agreement. The commissions paid to such other brokers amounted to $1,842.22,

and were charged by the defendants to the plaintiff's personal account, he protesting against the charge, and insisting that such commissions were an expense which should be borne by the firm.

This presents the only question in dispute between the parties in this action. It is argued in behalf of the plaintiff that his agreement with the defendants was an agreement to render personal services, and that it was not absolute, but conditional, the condition being that he should not be prevented from performing by sickness, or other disability happening without his fault. "Sickness," it is said, is an act of God, one of the "mutual hazards" assumed by parties when they enter into the copartnership relation, and which qualify the strict terms of copartnership agreements. Numerous authorities have been cited in support of this contention. In Bates, Partn. § 770, the author says: "There are certain risks, as sickness, temporary absence, or death, or other casualties, which are mutual hazards." And again, in section 780: "Incapacity from an act of God, for example, sickness, is a risk assumed by all, and absence from business on account of it is not a breach of an express agreement to give entire time to the partnership." In *Spalding* v. *Rosa*, 71 N. Y. 40, the court said: "Contracts for personal services are subject to this implied condition that the person shall be able at the time appointed to perform them, and if he dies, or, without fault on the part of the covenantor, becomes disabled, the obligation to perform is extinguished." The rule has been frequently applied in cases where parties contracting to render services have been prevented from full performance by the act of God, or of the law. In such cases, recovery is allowed on a *quantum meruit* for the work actually done. *Jones* v. *Judd*, 4 N. Y. 412; *Fahy* v. *North*, 19 Barb. 342; *Wolfe* v. *Howes*, 20 N. Y. 197; *Clark* v. *Gilbert*, 26 N. Y. 279; *Lacy* v. *Getman*, 119 N. Y. 115, 23 N. E. Rep. 452. All the cases cited, however, qualify the general rule above referred to. They are "marked by the circumstance that the services belonged to the class of skilled labor." *Lacy* v. *Getman*, 119 N. Y. 114, 23 N. E. Rep. 452. In *Spalding* v. *Rosa*, 71 N. Y. 40, the appearance of Wachtel in the operas was the principal thing contracted for. His presence was of the essence of the contract, and his part in the performance could not be performed by a deputy or any substitute. It was held that his sickness, occurring without his fault, was a valid excuse for the non-performance of the contract sued upon, and protected the defendants from a claim for damages. "Contracts of this character," the court said, "for the personal services, whether of the contracting party or of a third person, requiring skill, and which can only be performed by the particular individual named, are not in their nature of absolute obligation under all circumstances. Both parties must be supposed to contemplate the continuance of the ability of the person whose skilled services are the subject of the contract, as one of the conditions of the contract." *Wolfe* v. *Howes*, 20 N. Y. 197, was an action brought by an executor to recover the value of services rendered by his testator under an agreement to do "pot-room work" for the defendants for a year. After seven months of service, the testator was disabled from further performance by sickness, from which he died. It was held that plaintiff could recover what the services rendered were fairly worth. Judge ALLEN said: "There can be little doubt, I think, that the contract with Vache contemplated his personal services. * * * The business of pot-making required skill and experience. It was an art to be acquired after much study and labor, and which Vache seemed to have accomplished. The execution of the work required his constant and personal supervision and labor. No common laborer could have supplied his place." The contract, he said, "was personal, and the executor could not have employed a third person to execute the contract on the part of his testator, Vache." The case of *Robinson* v. *Davison*, L. R. 6 Exch. 269, has been cited by the learned counsel for the plaintiff. The defendant's wife was an "eminent pianist." She had contracted to ap-

pear and assist at a concert to be given by the plaintiff. Illness prevented her, and the plaintiff was thereby put to considerable expense and trouble. The question was whether he was entitled to recover damages for a breach of the contract, and the judgment was that he had no cause of action. The point decided is identical with that decided in *Spalding* v. *Rosa*. "This was a contract," says Chief Baron KELLY, "for the performance of a service which could alone be undertaken by the defendant's wife. She could not depute it to any one else, as it depended on her own personal skill." BRAM-WELL, B., said: "This is a contract to perform a service which no deputy could perform." And CLEASBY, B.: "It is a duty which could not be done by deputy, but only by the lady herself; and, that being so, I think that disability or incapacity caused by the act of God excuses the defendant." One further citation will suffice. In *Wheeler* v. *Insurance Co.*, 82 N. Y. 543, it was held that, to excuse non-performance of an express condition in a contract, it must appear that performance could not by any means have been accomplished, the court saying: "When the contract is for personal services which none but the person contracting can perform, inevitable accident, or the act of God, will excuse non-performance, but when the thing or work to be performed may be done by another person, then, all accidents are at the risk of the promisor."

Applying these principles to the case in hand, I am led to the conclusion that the plaintiff was not absolved by his sickness from his covenant to attend to the firm's business upon the stock-exchange. It was a covenant to render personal services which could be performed quite as well by another person,—which were, in fact, satisfactorily performed by another person,—and it imposed upon the plaintiff the duty of performing through a substitute, if for any reason he was disabled from performing personally. This being so, no good reason can be suggested why the expenses made necessary by his default should be charged upon the firm. When the plaintiff declared his inability to further perform the duty assumed by him as a member of the firm, and neglected to make necessary provision, so that the business of the firm should not be interrupted, or the firm exposed to loss through his misfortune, the copartners, in my judgment, were at liberty to have his duty done by a proper substitute, at his expense. By no process of reasoning can this be converted into an allowance of extra compensation to the defendants for increased labor in the copartnership business, caused by the plaintiff's illness. It does not appear that any additional labor was thereby imposed upon either of the defendants. By his agreement with the others, the defendant Theodore W. Myers was not bound to, nor does the testimony disclose that he did, take any active part in the business of the firm. The defendant Edward H. Myers was not a member of the stock-exchange, and could not, therefore, take the plaintiff's place, and perform his duties. Under the admitted circumstances, it seems to me to be in accordance with plain principles of equity that the plaintiff, as he receives the benefit under the agreement of services which he engaged, but failed to perform, and which the necessities of the common business required should be performed by another party in his stead, shall be charged with the expenses which were the necessary and unavoidable results of his default.

My attention has not been called to any case in which the precise question presented here has been considered, but authority is found in a variety of cases where the general principle has been declared. In *Stegman* v. *Berry-hill*, 72 Mo. 307, the point decided, as stated in the head-note, was as follows: "If two parties enter into a joint undertaking, and one of them fails to perform his part of the work, the expense of having it done by another is chargeable to him and not to his partner." The facts were that the plaintiff had agreed to grow a crop of fruit upon the defendant's farm, and gather the crop, on shares, but neglected to gather it, and defendant was compelled

to go to the expense of having it done. The court said: "If it was work to be performed by plaintiff, which he neglected or refused to do, the expenses of having it done should be borne by him, and not by the defendant." In *Leighton* v. *Hosmer*, 39 Iowa, 594, Hiatt, one of several copartners, covenanted to give all his time to the business of the firm. He was prevented from doing so by sickness, and during a portion of his absence a man was hired to attend to his duties, and paid out of the funds of the firm. In his account with his copartners, he was charged with $1,100 for loss of time. The amount of this charge was reduced by the court, but his liability to the firm for failure to fulfill his agreement was upheld. The court said: "The stipulation in the articles of copartnership is different in effect from the implied obligation of the law, and bound the partners expressly to devote their time to the business of the firm, and this express obligation may be construed as equivalent to an agreement to account for any loss of time." It was held in *Hunter* v. *Little*, 17 Wkly. Dig. 500, that a partner is not required to devote all his time to the management of the firm business, in the absence of a covenant to that effect, and that such a covenant adds to the general requirements of services to be rendered by copartners. "The general liability to sickness by partners," it was said, "is considered in the formation of the agreement. If there is no covenant, sickness will not generally be charged against a partner." In that case, Hunter and Little were to have the general management of the business, and agreed to devote their time exclusively thereto, and for their services each was to receive wages, irrespective of profits, at the rate of $100 a week. Hunter became sick, and unable to render the stipulated services, and he was held not entitled to recover the stipulated wages for the period of his disability. In Marsh's Appeal, 69 Pa. St. 30, a partner who had agreed to attend to the finances of the firm, and failed to do so, was held chargeable, on an accounting, for the value of the services he had withheld. "If the partnership has suffered loss by his breach of the agreement, why should he not make good the loss, and put the firm in the same condition it would have been in if he had not broken the agreement?"

My conclusion is that the item of $1,842.22 is properly chargeable upon this accounting to the plaintiff's personal account.