(7 Misc. Rep. 663.)

### WALTON et al. v. RAFEL et al.

(Common Pleas of New York City and County, General Term. April 2, 1894.)

ASSIGNMENT—CONTRACT.

A contract which, by its express terms, is binding upon the legal representatives of the parties, is assignable.

(Syllabus by the Court.)

Appeal from district court.

Action by John Douglas Walton and another against Will. Rafel, impleaded with others, for forcible entry and detainer under a stipulation that the sole question in controversy is whether the instrument set out below is assignable. The persons designated as parties of the first part are plaintiffs, and the parties of the second part are the Kaliskies, defendant's assignors. There was a judgment in favor of plaintiffs, and defendant Rafel appeals. Reversed.

The instrument, the assignability of which is in question, is as follows:

(1) The parties of the first part permit the parties of the second part to establish, conduct, and carry on in their present place of business, and in such addition thereto as they may make, at the northwest corner of Fifty-First street and Eighth avenue, in the city of New York, what is known as a shoe department, and for such shoe department they are to have and occupy the space shown on the diagram hereto annexed, which is made a part hereof. (2) The parties of the second part may place and have proper show cases in said premises occupied and to be occupied by said parties of the first part, but the same are to be so placed as not to interfere in any way with the general business of the parties of the first part. They are also to have a space, to wit, all of the show window in store No. 857 Eighth avenue. (3) The goods sold in the so-called shoe department are to be sold in said department in the name of the parties of the first part. All show cases and signs are to have thereon the names of the parties of the first part. The

said parties of the first part are to supply, without charge, all wrapping material, and also to deliver all merchandise sold in said department free of charge in New York City only. Each party to this agreement is to pay one-half of the advertising expenses of the shoe department; but it is understood and agreed that no advertising for the shoe department shall be contracted for without the consent of both the parties hereto. The parties of the first part are to furnish the necessary gas and heat, and keep said department in as clean a condition as the rest of their said premises. The parties of the first part are not to sell, or permit to be sold, in said premises any shoes or other articles connected with the shoe or boot business other than those sold by said parties of the second part. The parties of the second part agree to carry a full assortment of goods necessary for said shoe department, and to make sales thereof at reasonable prices, and to meet all reasonable competition. (4) The parties of the second part are to furnish the requisite removable fixtures, such as rugs, chairs, and shoe cases, and they are also to employ the necessary help for the proper conducting of the said department, but each employe is subject to the approval of the parties of the first part. Said employes to be permitted to remain in and about the premises on each business day. But the said parties of the first part are to furnish the requisite stationary fixtures, such as counters, shelves, drawers, etc., and they are also to furnish a cash system, either messenger or otherwise, at their own cost and expense. The parties of the second part are to keep the stock of their said shoe department insured in their own name and at their own cost and expense. (5) It is agreed that the delivery of cash on any sale in the said shoe department to a cash boy or girl, or other employe of the parties of the first part, shall, in the contemplation of this agreement, be deemed a delivery to the parties of the first part. (6) The parties mutually agree that they will keep separate accounts of all sales and receipts in said department, and said parties of the first part are to make to the said parties of the second part weekly payments in current funds of the United States of the sum or amount of the receipts of said department, less the percentage hereinafter fixed or agreed upon. All sales are to be made for cash, and the parties of the first part are to be merely the agents of the parties of the second part in the receipt of the same. The parties of the second part are to have the right and privilege of examining the accounts of said shoe department kept by said parties of the first part. (7) In lieu of all charges for rent, gas, and heat, and the other matters and incidentals herein mentioned, the parties of the first part are to receive the sum of 10 per cent. on the gross amount of all sales actually made in said shoe department. The sale of the present stock of rubbers of the said parties of the first part is to be transferred to the said shoe department, and the same sold there for and on account of the parties of the first part, and on which no commission or charge is to be made by either party. (8) This agreement is to go into effect as soon as the alterations in the new premises of the parties of the first part are complete, but not later than May, 1891, and to continue for a period of five years from May 1, 1891, so that this agreement shall terminate on the 1st day of May, 1896. (9) In case said parties of the first part should sell or otherwise dispose of their said business, or materially change the same, to the injury of parties of first part, then the parties of the second part, at their election, may terminate and cancel this agreement. (10) A breach of the terms of this agreement, or of either thereof, shall operate, at the election of the party aggrieved, as a forfeiture or termination and cancellation of this agreement. (11) The parties of the first part agree, during the term herein fixed, or of any renewal thereof, to allow the parties of the second part to continue to remain in undisturbed possession of the portion of the premises which is and may be so assigned to them. (12) This agreement is to bind the parties hereto, and their legal representatives.

Argued before BISCHOFF and PRYOR, JJ.

B. Lewinson, Edwin T. Taliaferro, and Max J. Kohler, for appellant.

Ormiston & Dorsett, for respondents.

PRYOR, J.   The prompt disposition of the appeal, entreated by counsel on the argument, precludes the possibility of an opinion at all commensurate with the thoroughness of the able and exhaustive briefs with which we are favored   We must be content barely to state the grounds of our decision.   Conceding, for argument, the position of the respondents, that the instrument under examination is not a lease, still we are unable to detect in its terms any indication of such personal trust and confidence reposed in the Kaliskies as would render the contract unassignable by them.   Every party to an agreement confides that the other will perform it; else, surely, he would not accept the other's engagement.   Beyond this, what is there on the face of the instrument to reveal a reliance on the peculiar character of the Kaliskies?   Nothing is said of their personal qualifications, nor of their repute in the community, nor of any circumstance that would distinctively commend them to the confidence of the respondents   Neither is it apparent that what the Kaliskies undertake may not be as well performed by another as by themselves. It may not be urged that one succeeding the Kaliskies, by assignment or otherwise, might, because of the intimate relations with the respondents, afflict them with immeasurable embarrassment and injury, since against such a contingency they have provided abundant precaution in the instrument,—a security as available and effectual against an assignee as between the parties themselves.   The assignee of the contract must take it as well with its burdens as its benefits.   But two provisions in the instrument seem to us conclusive against the construction that the relation it creates is to subsist only between the Kaliskies and the respondents.   The ninth article stipulates that, should the respondents sell or otherwise dispose of their business, the Kaliskies may cancel the agreement.   Now, if the agreement be one of personal trust and confidence of such sort that its obligations are reciprocally due between the parties, and to none else, then, manifestly, whenever the respondents should retire from the business during the stipulated term, the contract would be broken, and the right of the Kaliskies to cancel it would be clear and indisputable.   Why, then, an express provision for such right, unless upon the hypothesis that the right would not otherwise exist,—i. e. except upon the hypothesis that the contract and its obligation on the Kaliskies would survive in favor of the successors and assigns of the respondents?   The twelfth article is still more explicit to the effect that the relations and obligations it creates may subsist between the respondents and the assignee of the Kaliskies.   It stipulates that "this agreement is to bind the parties hereto, and their legal representatives."   If, as respondents contend, the contract was one of personal trust and confidence, then would it be terminated upon the death of either party, and would not continue to bind his legal representatives.   Lacy v. Getman, 119 N. Y. 109, 115, 116, 23 N. E. 452; Greenburg v. Early (Com. Pl. N. Y.) 23 N. Y. Supp. 1009.   On the other hand, it is only a contract which does not involve personal confidence that may be enforced against the estate of the deceased party.   Bish. Cont. § 861.   By this provision the benefits and the burdens of the contract devolve upon

the representatives of the parties; and, "in all cases when the executor or administrator would succeed to the rights and liabilities of a deceased party to a contract, the contract is assignable by the act of the parties." Devlin v. Mayor, etc., 63 N. Y. 8, 16. Descendibility and assignability are convertible terms. Zabriskie v. Smith, 13 N. Y. 322. We see no escape from the conclusion that the Kaliskies' interest in the contract is transferable.

We perceive in the agreement no element of a partnership inter sese, nor as to third persons. Here is no common business or common stock, but each party retains his own stock and his own business. Whatever sales are made by the respondents are made expressly "as agents of the parties of the second part,"—that is, the Kaliskies; and whatever money is received by the respondents is to be paid over to the Kaliskies, less the percentage on sales, which, retained "in lieu of rent," is ineffectual to constitute a partnership. Richardson v. Hughitt, 76 N. Y. 55; Cassidy v. Hall, 97 N. Y. 159; Bank v. Gallaudet, 122 N. Y. 655, 657, 25 N. E. 909. From the conclusion that the interest of the Kaliskies under the agreement was assignable, it results that the judgment is erroneous. Judgment reversed, and cause remanded to the court below for entry of final order in favor of appellant, pursuant to the stipulation of the parties.