(35 Misc. Rep. 220.)

### ARMING v. STEINWAY et al.

(Supreme Court, Trial Term, Kings County. June, 1901.)

1. CLAIMS AGAINST DECEDENT'S ESTATE—EVIDENCE.

Defendant's decedent had stated to plaintiff that if she would give all the time she had to German lessons to pupils which he would send her, in a room which he would let her have, she would earn $15 a week for the ensuing 40 weeks. She agreed to give all the time to that purpose, and he promised to pay one dollar a lesson for pupils sent by him who did not pay her for their lessons. *Held*, in an action against the executors, that plaintiff could only recover one dollar for each pupil sent by him who did not pay.

2. SAME—TERMINATION OF CONTRACT.

Where defendant's decedent promised to pay plaintiff one dollar a lesson for pupils sent by him to her who did not pay her for their lessons, such contract terminated with the death of the decedent.

Action by Fannie Arming against Charles H. Steinway and others, executors of William Steinway, deceased. Verdict for plaintiff. Motion for new trial granted on conditions.

Cochran, Moore & Hildreth, for plaintiff.
Fernando Solinger, for defendants.

RUSSELL, J. On the trial the plaintiff had a verdict of $600 and interest for 40 weeks' of assumed service in teaching pupils the Ger-

man language at the request of the late William Steinway. The sole proof of the contract was the testimony of plaintiff's mother, who testified that at Steinway Hall, on the 21st of September, 1896, Mr. Steinway told the plaintiff that "she should give him all the time she had to spare to give German lessons to pupils, which he would send to her in a room in Steinway Hall, which he would let her have for that purpose, and that she would surely earn $15 a week for the time from the 21st of September till the 30th of June, 1897, and she would give him all the time." Contracts carrying pecuniary obligations may undoubtedly be inferred from language sufficiently expressive to support the presumed intent to pay by the one and to receive by the other. But the supporting basis must be wholly of service for pecuniary reward so far as it can be enforced, and the whole transaction so construed in defining the limit of legal obligation. Here the plaintiff could not but understand that the offer of Mr. Steinway was the utterance of a charitable purpose to help young students to the extent of the deficiency in their power to pay themselves for the lessons furnished, to give the plaintiff herself a free and suitable place to teach any who might choose to apply, whether sent by Mr. Steinway or not, expecting to pay for the benefit, leaving her entirely the privilege of teaching every one she chose to serve for such emoluments as she required, with proper surroundings and conveniences furnished her gratuitously by her benefactor, William Steinway. The only pecuniary obligation Mr. Steinway assumed was to pay one dollar per lesson for those sent by him who did not pay for their lessons. He did not guaranty $15 a week for 40 weeks. He simply asserted his conviction that she could earn that sum, and I find no proof in this case that she did not. For all that appears, she may have received far more from pupils who did pay her.

There is some evidence that Mr. Steinway did send to her Miss Crawford and Miss Mengel, to whom she gave 17 lessons. The case is silent as to any others being authorized by him to incur pecuniary obligations for him, and on the 11th of December, 1896, the plaintiff, by itemized account, only claimed $39 instead of $150 then earned, if her position now be correct.

Another serious obstacle lies in her path. The benevolent execution of the plan continuously ran with the volition of Mr. Steinway in finding needy learners, and ceased by closure when the heart which willed and chose each benevolence was stilled by death. The charity was personal, not transmissible to the discretion of executor or next of kin. Death of the employer stops the further execution of many contracts of service, even where the server can continue his work. Lacy v. Getman, 119 N. Y. 109, 23 N. E. 452, 6 L. R. A. 728, 16 Am. St. Rep. 806; Weber v. Bridgman, 113 N. Y. 600, 21 N. E. 985; Trust Co. v. Wilson, 139 N. Y. 284, 34 N. E. 784, 36 Am. St. Rep. 696; Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, 5 L. Ed. 589. A fortiori, when the continuous execution lies only with the employer through his own intelligent selection, his death closes the work under the plain purpose and scope of the contract. William Steinway died November 30, 1896, less than three months from the date of the asserted contract. No recovery for over 10 weeks could be obtained un-

der any permissible view of the contract, and no jury can, upon such proof as here given, take for a young lady from a dead man's estate the amount of the verdict rendered. Let there be a new trial, unless the plaintiff stipulates to reduce the recovery to $17 and interest from November 30, 1896.

Ordered accordingly.