Boyd P. deBrossard, Appellant, v Robert M. Van Norden et al., as Executors of Pauline Cave, Deceased, Respondents.

First Department, November 19, 1985

**APPEARANCES OF COUNSEL**

*Robert R. Slaughter* and *Steven Mairella* of counsel *(Paskus, Gordon & Mandel,* attorneys), for appellant.

*James F. Hart* for respondents.

**OPINION OF THE COURT**

Sullivan, J.

This is an appeal from the grant of summary judgment dismissing the complaint. The facts are not in dispute. On May 29, 1970, contemporaneously with the execution of a formal separation agreement between them, plaintiff Boyd P. deBrossard and Pauline Cave, then Pauline deBrossard, entered into an agreement, which, insofar as is relevant, provides:

"1. Pauline employs Boyd as a financial advisor and consul-

tant to her and Boyd accepts such employment. Boyd shall, if requested by Pauline, serve as a trustee of a trust of which she is the settlor * * * Boyd, as financial advisor to Pauline, shall, at her written request, advise her in writing or by telephone (as he elects) with respect to such financial matters.

"2. Pauline shall pay Boyd for such services at the rate of $25,000 a year to commence forthwith and continue through January, 1994, unless his services are sooner terminated by his death * * *

"3. Pauline's obligation to Boyd shall be binding upon her heirs, representatives and assigns and shall terminate only in the event of Boyd's death."

Plaintiff received the payments due under this agreement until Cave's death on November 20, 1983. When her executors, defendants herein, refused to make any further payments, plaintiff commenced this action to recover $241,667, representing the balance due under the damage formula in the agreement.*

In their answer defendants asserted that the agreement between plaintiff and Cave was a personal service contract which, by operation of law, terminated upon Cave's death. Arguing that since its terms were plain and unambiguous and that therefore interpretation of the agreement posed only a question of law, they moved for summary judgment dismissing the complaint.

Special Term, citing *Minevitch v Puleo* (9 AD2d 285) and *Lacy v Getman* (119 NY 109), agreed with defendants and found the contract in question to be a personal services agreement governed by "the general rule that where a servant is employed to render personal services, such a contract is terminated and discharged by the death of the servant or of the master." Accordingly, it granted the motion. We find that the agreement, considered as a whole and its unambiguous terms accorded their plain meaning, is not a conventional contract for personal services terminating upon the death of either party, but rather an agreement which, until January 1994 or his death, should that occur first, obligates Cave or

---

* Paragraph 4 provides in pertinent part: "Consequently, if Pauline defaults hereunder, Boyd shall not be required to attempt to mitigate damages and Pauline shall pay Boyd: (a) $591,667 less whatever amounts have been paid or deemed to have been paid by her to him hereunder and (b) the reasonable attorneys' fees and expenses incurred by him as a result of or arising out of such default."

her executors, to make annual payments to plaintiff. Thus, we reverse, grant summary judgment to plaintiff and direct entry of judgment in his favor in the sum sought.

At the outset we note that the cases upon which Special Term relied are distinguishable. Both involved conventional personal service contracts under which servants sought to recover the value of services performed by them after the master's death. In neither case did the parties agree, as they did here, that the employer's obligation to the servant would survive death. Paragraph 2 of the agreement expressly provides that Cave's obligation to make annual payments was to terminate in January 1994 or upon plaintiff's earlier death. Paragraph 3 provides that the obligation to make annual payments through January 1994 would be binding upon Cave's heirs, representatives or assigns, and would terminate only in the event of plaintiff's death.

In summarizing the operative terms of the agreement, Special Term stated that it provided for payment to plaintiff " 'at the rate of $25,000 per year' for his services 'unless his services are sooner terminated' ". In deleting the phrase "by his death" from the language it quoted and by ignoring or overlooking all of paragraph 3, Special Term, in effect, created an implied condition, not contemplated by the parties, to the performance of Cave's obligation, viz., her survival. Such a condition "will be implied only when the continued existence of a party is assumed as the basis of the agreement." *(Tobani v Carl Fischer, Inc.,* 263 App Div 503, 507, *affd* 289 NY 727.) Here, not only is the agreement devoid of any language justifying such implication, but the parties expressly agreed in clear language that Cave's obligation to make annual payments to plaintiff survived her death and was binding on her executors. By failing to note paragraph 3's provision that Cave's obligation "shall be binding upon her heirs, representatives and assigns and shall terminate only in the event of [plaintiff's] death," Special Term rendered meaningless this plainly worded, unambiguous provision and thus violated a cardinal rule of construction. "The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect." *(Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42, 46.)

Furthermore, in construing the agreement as a conventional personal service contract which terminated upon Cave's death as a matter of law, Special Term erroneously linked the

parties' obligations in a way never contemplated, and contrary to the agreement's unambiguous language and structure. It found, for instance, that plaintiff "was to provide financial consultant services and advice to the decedent from May 29, 1970 through January, 1994." More precisely, however, paragraph 1, which delineates plaintiff's obligation, created, in effect, an option in favor of Cave with respect to plaintiff's services as a financial consultant. While plaintiff agreed to make his services available, he was not under any obligation to perform any services unless Cave specifically so requested. In contrast, Cave's obligation, as defined in paragraph 2, is not conditioned upon an actual request that plaintiff perform, or his performance of, consulting services for her. Such distinction, in itself, strongly suggests that the parties were not contemplating a conventional master-servant relationship.

Moreover, in finding that "plaintiff does not allege or demonstrate that any payment is due for services previously rendered", Special Term imposed the further condition that Cave's obligation to make annual payments depended upon the actual performance of consulting services. According to the agreement, however, the consideration for Cave's obligation was the right to utilize plaintiff's services as a financial consultant, whenever and to whatever extent she may have desired, and not the performance of such services. Had they so desired, the parties could have conditioned Cave's obligation on the actual performance of consulting services. They did not. Where such terms do not expressly appear, they "cannot be supplied by the courts under the guise of construction or interpretation, their power being limited to giving effect only to the parties' *expressed* intent". *(Wilson Sullivan Co. v International Paper Makers Realty Corp.,* 307 NY 20, 25.) Similarly, it has been noted, "Where language has been chosen containing no inherent ambiguity or uncertainty, courts are properly hesitant, under the guise of judicial construction, to imply additional requirements to relieve a party from asserted disadvantage flowing from the terms actually used". *(Collard v Incorporated Vil. of Flower Hill,* 52 NY2d 594, 604.)

Review of the provisions of the agreement in question reveals that it creates obligations significantly different from those usually associated with a conventional personal service contract. For example, Cave unconditionally agreed to make annual payments to plaintiff over a fixed period of time; she did not reserve to herself the right to terminate her obligation; the only contingency contemplated by the parties that

would terminate her obligation prior to January 1994 was plaintiff's earlier death; and her obligation is expressly made binding on her executors. Moreover, it is a fundamental tenet of contract construction that "due consideration must be given to the purpose of the parties in making the contract". *(Matter of Cromwell Towers Redevelopment Co. v City of Yonkers,* 41 NY2d 1, 6.) That purpose may be gleaned not only from an agreement's express language, but also from the factual setting attending its execution. The agreement in question was entered into contemporaneously with the execution of a separation agreement. Thus, it is fair to conclude that the parties intended that the agreement serve as a device to mask the payment of alimony, and to provide plaintiff with a fixed annual income until January 1994, or until his death, should that first occur.

While the agreement, without doubt, has a certain personal service aspect to it, the law does not require that it be construed as a conventional personal services contract. As Williston has noted: "Undoubtedly in many contracts of employment, the undertaking of the employer is personal in character. But the assumption frequently made in the cases that, because the contract of the employee is personal, that of the employer necessarily must be, seems wholly unfounded. There is no necessity logical or legal for both the promises in a bilateral contract to be personal in character because one is." (18 Williston, Contracts § 1941, at 64 [3d ed 1978].) Moreover, "[t]he fact that the promised performance of the surviving party to a bilateral contract is personal in character does not discharge the promise of the deceased party which does not require a personal performance." *(Id.,* § 1945, at 77.)

Since, as both parties concede, no issue of fact exists and inasmuch as "[a] motion for summary judgment, irrespective of by whom made, invites a court, even on appeal, to search the record and to award judgment where appropriate" *(Fertico Belgium v Phosphate Chems. Export Assn.,* 100 AD2d 165, 171; *see,* CPLR 3212 [b]), we direct the entry of judgment in plaintiff's favor in the sum of $241,667, notwithstanding his failure to move for such relief. Plaintiff's second cause of action, for attorneys' fees and expenses, for which the agreement expressly provides in the event of default, is remanded for assessment.

Accordingly, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered January 18, 1985 granting defendants' motion for summary judgment dismiss-

ing the complaint, should be reversed, on the law, with costs and disbursements, the motion denied and summary judgment awarded to plaintiff on the first cause of action in the sum of $241,667, with interest, and the second cause of action severed and remanded for an assessment of damages.

KUPFERMAN, J. P., CARRO, LYNCH and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on January 18, 1985, unanimously reversed, on the law, the motion denied and summary judgment awarded to plaintiff on the first cause of action in the sum of $241,667, with interest, and the second cause of action severed and remanded for an assessment of damages. Appellant shall recover of respondents $75 costs and disbursements of this appeal.